SHORTESS, Judge.
Don James (plaintiff) filed this suit against the Town of Roseland (defendant) to recover for personal injuries he sustained when he stepped into an uncovered water meter hole which allegedly had been dug on his property by defendant’s employees. From a judgment of the lower court dismissing his suit, plaintiff appeals.
FACTS
On the morning of April 18, 1989, plaintiff and his wife left home for their respective places of employment. While they were away, defendant’s employees allegedly entered their property, and without any prior notification, installed a water meter in their yard. The water meter hole was left uncovered, and no markings or warnings were placed around the area to show the hole had been dug.
Upon returning from work on the afternoon of the 18th, plaintiff set out to do various outside chores around his house. While attempting to unwind a long garden hose, he stepped into the uncovered and unmarked water meter hole and sustained injuries to his back and right knee.
At trial defendant moved for an involuntary dismissal after plaintiff rested his case, on the grounds plaintiff failed to present any evidence showing defendant was responsible for digging or maintaining the hole in plaintiff’s yard. Plaintiff, however, immediately requested that he be allowed to reopen his case to present the testimony of defendant’s three former employees (Charles Bracey, Patrick Kelly, and Darron Thomas) who in their depositions had admitted responsibility for digging and not covering or marking the hole. Plaintiff argued he believed, or was led to believe by defendant’s counsel, these witnesses were available and would be called by defendant in its case-in-chief and that on cross-examination he would be able to establish defendant was responsible for digging the hole and leaving it uncovered and unmarked.
Rather than allowing plaintiff to reopen his case to call the witnesses, the trial court allowed him to introduce the depositions of those witnesses subject to defendant’s objection. The court then took the entire case under advisement and later dismissed plaintiff’s suit after ruling the depositions were inadmissible because there had been no showing the deponents were unavailable. The trial court erred in this ruling. We find the depositions were admissible. During the colloquy between counsel and the court, defendant’s counsel made this statement: “They don’t work for the City any more, and I haven’t been able to determine whether or not they are even available or are here. Our attempts to reach them yesterday were unsuccessful.” Contrary to the statement found in the trial court’s opinion that “[n]o summons were issued to these parties,” the record reflects summons were issued for all three witnesses. However, the sheriff failed to serve Bracey, Thomas, and Kelly.
Louisiana Code of Evidence article 804(A) regarding the definition of unavailability provides, in pertinent part: “[A] de-clarant is ‘unavailable as a witness’ when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court.”
*1013 Clearly, these witnesses were unavailable, and the trial court legally erred in excluding their depositions on the grounds there was no showing of unavailability.
We will now review this case de novo in accordance with our appellate review duty under Buckbee v. United Gas Pipe Line Co., 561 So.2d 76, 85-87 (La.1990).
LIABILITY
A review of the deposition testimony of Bracey, Kelly, and Thomas clearly shows they were defendant’s employees and were the parties responsible for digging the hole in plaintiffs yard and leaving it uncovered and unmarked. Accordingly, under Louisiana Civil Code article 2820, defendant is liable for the acts of its employees.
The trial court, despite having found no liability on the part of defendant, stated in its opinion that “[t]he Court finds he (plaintiff) should be considered 75% at fault.” However, the trial court’s ruling on this issue can be disregarded since its finding of no liability on the part of defendant required dismissal of plaintiff’s suit. Our review of the record reveals defendant’s employees entered plaintiff’s property without any prior notification and installed a water meter in his yard. Moreover, defendant’s employees admitted in their depositions they left the water meter hole uncovered and unmarked. Both plaintiff and his wife testified they had no idea the hole had been dug in their yard and did not see it because it was hidden under a tree and surrounded by shrubs. Under these circumstances, the unmarked and uncovered hole constituted a trap for the unwary. Accordingly, we find no fault on plaintiff’s part and hold the accident was caused solely by the fault of defendant’s employees in failing to cover or mark the hole to warn of the danger.
DAMAGES
Plaintiff initially sought treatment at Lallie Kemp Regional Medical Center. He was diagnosed with acute lumbar strain and a sprain of the right knee. He was treated and released with instructions to rest a few days before going back to work. Because of continuing back pain, plaintiff saw Dr. Jeffrey Johnson, a specialist in the field of internal medicine, on May 2, 1989. Johnson diagnosed a strain to the lumbar area of his back and recommended rest, low heat, anti-inflammatories and muscle relaxers. He returned to Johnson on May 17 with complaints of persistent pain in his back and some numbness in the lateral aspect of the right foot in the fourth and fifth toes. Johnson continued conservative treatment and referred plaintiff to Dr. Larry Ferachi, an orthopedic surgeon. Ferachi examined him on May 19 and found plaintiff had some limitations in bending forward, backward, to the right, and to the left, with spasms in the lower back muscles on the right side. A CAT scan ordered by Ferachi appeared to be normal.
Plaintiff returned to Johnson on August 28, 1989, with continuing complaints of back pain which had been aggravated by an attempt to lift the spare tire out of a car. He again saw Johnson with complaints of pain on January 2, 1990, after he attempted to fix a pipe under a house.
In February 1990 plaintiff sought treatment from another orthopedic surgeon, Dr. Bernard Manale. Upon his examination of plaintiff, Manale detected objective evidence of nerve injury. His diagnosis was that plaintiff “probably had sciatica and probably had some sort of radiculitis of the SI nerve root on the left.” Manale found these problems consistent with the history of plaintiff’s accident and recommended he not engage in any physical work. He also ordered additional diagnostic testing because he believed at that point that the cause of plaintiff’s radiculitis was a ruptured disc. Manale testified EMG and nerve conduction studies clearly showed objective evidence of some injury to the nerve. However, based on the results of an MRI, he ruled out a ruptured disc; he felt plaintiff's nerve injury and back pain were caused by some other source. At the time of his deposition he would not recommend plaintiff as a candidate for surgery until further diagnostic tests had been made.
*1014 Plaintiff and his wife testified that from the initial injury up to the time of trial, plaintiff felt terrible pain in his back. Plaintiff also testified that despite taking medication, resting, and following his doctors’ orders, his back condition has not improved.
In addition to damages for pain and suffering, plaintiff seeks damages for past lost wages and loss of earning capacity. The record reflects he was 33 years old at the time of trial, and has a high school education. He has been employed as a laborer all of his life and worked steadily at Good Hope Refinery until the plant closed. He worked only sporadically doing odd jobs from then until the month immediately preceding the accident, when he obtained permanent employment with Delta Door Design in Osyka, Mississippi, earning $3.55 per hour. At trial, plaintiff testified he would like to return to work but did not feel he could because of his back pain.
Based on this evidence, we find plaintiff is entitled to general damages for pain and suffering, lost wages and earning capacity, and future medical expenses in the sum of $10,000.00[1] and is also entitled to stipulated past medical expenses of $4,088.30.
For the foregoing reasons, we reverse the decision of the trial court and render judgment as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of plaintiff and against defendant in the sum of $14,088.30, together with legal interest thereon from date of judicial demand until paid. All costs of trial and appeal are assessed to defendant.
REVERSED AND RENDERED.
EDWARDS, J., concurs

. We have completely disregarded the trial court’s gratuitous establishment of a general award of $7,500.00 for plaintiffs injury and medical expenses notwithstanding its dismissal of plaintiffs suit, since it could not do this.