JjYELVERTON, Judge.
Alisa Lynn Boyd, the plaintiff, 27, lost her personal injury case when a jury found that, although Ruby Menard, the defendant, negligently rear-ended the car Boyd was driving on a street in Abbeville on November 27, 1990, Menard’s negligence was not a cause of any injury to the plaintiff. Boyd appealed, contending that there was trial court error in the admission of certain evidence, as well as in the jury instructions, and that these rulings were so prejudicial that they caused the jury to find that the accident was not a cause *605 of injury. After a thorough examination of this record, we have found no error by the trial court in either its rulings or its instructions to the jury, and we cannot say that the jury was wrong in its ^finding that the accident was not the cause of the ruptured disc which Boyd contended she suffered. We do find, however, that the jury was clearly wrong in finding that Boyd failed to prove some injury as a result of the accident, and we reverse and make an award, for reasons which follow.
The accident was a minor one. Boyd’s Honda Civic was hit from the rear while Boyd was stopped in the act of turning left. Both Boyd and her passenger, who was seven months pregnant, were taken to a local hospital by ambulance. The passenger went into premature labor, but the record does not tell us whether this was caused by the accident or something else. There was very little damage to either vehicle. Liability was established.
In the emergency room Boyd complained of low back pain. After a several hour wait she was seen by an emergency room physician. She was given medication and released to go home.
Six days after the accident, on December 3, 1990, Boyd went to see her family physician, Dr. Kate Lee. Dr. Lee had been treating her since November 1989 for various ailments including epilepsy, rheumatoid arthritis, and lupus. On this visit Boyd told Dr. Lee that she had been having low back pain for the six days since the accident. After examining her, Dr. Lee noticed that the patient was tender at the L-5 level and having muscle spasms.
Again on January 7, 1991, and January 25, 1991, Boyd saw Dr. Lee, continuing to complain of low back pain. Dr. Lee prescribed a medication on both occasions. On February 19, 1991, Dr. Lee admitted Boyd into the hospital. The doctor did a skeletal examination, ordered a CAT scan, and subsequently, an MRI. A Lafayette radiologist, Dr. Tory Gunderson, conducted both tests and diagnosed a disc | sherniation at L-5, S-l. These tests confirmed Dr. Lee’s suspicion of a ruptured disc. Because Boyd had never complained to Dr. Lee about low back pain during the year preceding the accident while Dr. Lee was seeing her for these other conditions, and because of the radiology reports and her own physical examination, Dr. Lee believed, and so testified, that the automobile accident on November 27, 1990, caused the ruptured disc.
According to Dr. Lee, Boyd’s low back pain persisted. Being a general practitioner, and believing that Boyd needed to see a specialist, Dr. Lee recommended that Boyd see an orthopedist. Boyd’s attorney made arrangements for her to see Dr. Stuart Phillips, an orthopedic surgeon in New Orleans.
Dr. Phillips saw Boyd three times in mid-1992. He conducted a discogram as well as x-rays and an additional CAT scan. Dr. Phillips also reviewed the MRI and CAT scan ordered by Dr. Lee and conducted by Dr. Gunderson in reaching his diagnosis. He diagnosed her injury as a ruptured or slipped disc at the L-5, S-l level. Dr. Phillips testified that based on his examinations of Boyd and her medical history, it was his opinion that the rear-end automobile accident could and did cause her injury. He recommended back surgery to correct the disc.
Boyd testified that she had no prior back problems of the sort she experienced immediately following this accident. She said that since the accident her back has hurt pretty much all the time.
The above testimony and evidence favored the plaintiff’s side of the case and would have justified a jury verdict in her favor. There was other evidence, however, that cast doubt on the legitimacy of her claims.
pit was established, for example, that she had had numerous prior accidents and experiences which might have caused her injury. At age 11 she broke her back in a school bus accident. In 1977 or 1978 she suffered a lower back injury when she got kicked in the tailbone by a classmate. In 1985 she was in a car accident in Texas. She had been in several fights with her boyfriend, fights she apparently lost, once suffering a fractured skull and cheekbone. In 1989 she fell down some stairs. In that same year she was hospitalized for alcohol and drug dependency. Hospital records showed that there was a *606 diagnosis she suffered at one time from bipolar manic depression.
Following the accident in 1990 which forms the basis for this suit, the symptoms which she related to the doctors she saw were not always the same. She told Drs. Lee and Phillips that she had low back pain with pain radiating down the back of her legs. She indicated to Dr. James McDaniel in 1992 that the pain in her legs was in the front. Dr. McDaniel explained to the jury the medical significance of the location of leg pain as it related to the back.
Dr. McDaniel examined Boyd for the defendants. She complained of pain in her back and lumbar pain radiating to the front of her thighs. His physical examination was essentially normal. Dr. McDaniel reviewed the 1991 CAT scan and MRI. He questioned the quality of the tests but saw in them a disc protrusion at L-5, S-l, but no evidence of nerve root pressure. Because he related anterior thigh complaints with upper lumbar spine problems, he suggested additional testing in that area, but that testing was never done. The gist of Dr. McDaniel’s opinion, taking into account the slight nature of the accident and Boyd’s medical history, |swas that Boyd suffered no injury to L-5, S-l in the November 27, 1990 accident.
Although Boyd denied ever having had anterior thigh pain, and denied ever telling any doctor that she had, Dr. McDaniel and a Texas osteopath, Dr. Robert Campbell, both contradicted her. Dr. Campbell, licensed to practice medicine in Texas, testified that in 1986 he treated her for low back pain and that she told him then that her back pain radiated to the front of both legs. He diagnosed a lumbar strain caused by the old back fracture several years earlier.
Aside from the testimonial conflicts as to what went on in the examining rooms between Boyd and two doctors who testified, there were other instances which the jury could have regarded as reflecting on her credibility. She said she told Dr. Lee about her beatings at the hands of her boyfriend, but Dr. Lee denied this. Her testimony was contradicted about the severity of the accident, her life-style before the accident, and the amount and frequency of medication she required before the accident.
On this appeal, Boyd does not argue manifest error. She argues that the jury’s verdict should be disregarded and she should be given a trial de novo in this court, on account of trial court error in refusing to exclude certain testimony and other evidence.
First, she complains that the testimony of Dr. McDaniel and Dr. Campbell should be thrown out entirely. She accuses Dr. McDaniel of having taken on the role of advocate rather than a medical expert. This court found in Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La.App. 3d Cir.1993), quoting Dr. McDaniel, that his “sweeping denouncement of pain climes” reflected a “general bias | (¡against litigants.” There is no testimony in this record by Dr. McDaniel to justify a finding of bias, certainly not to the extent that his testimony should be disregarded. The mere fact that he disagreed with Drs. Lee and Phillips does not condemn his opinion as being unreliable. He had a low opinion of discograms, and thought that they were excessively used, saying “[y]ou have these groups, who owns these machines, who like to use discograms, because they’re very profitable.” Getting more specific, speaking of Dr. Phillips, Dr. McDaniels said: “It’s like this particular center that Dr. Phillips owns to do all these tests. You’ve got to justify having all this equipment. And I find that sometimes these tests are over done.” He added “Discograms are very controversial, and that’s why most orthopedists and neurosurgeons do not rely upon discograms.” We cannot say that Dr. McDaniel’s attack on Dr. Phillips, although somewhat scathing, amounted to such a raw display of bias as to destroy the efficaciousness of his testimony. The trial judge admitted his testimony as a medical expert. He testified before the jury as an expert. He gave medical reasons for his opinions. The jury was entitled to consider his opinions. We are not permitted to denounce the validity of his medical opinions in this case simply because he was found to have been biased in another case.
Boyd attacks the testimony of Dr. Campbell because he was not licensed as an osteopath in Louisiana. She cites La.R.S. *607 37:1284 which prohibits unlicensed osteopaths from testifying as a medical or surgical expert in any court. Dr. Campbell was not licensed in Louisiana but he was licensed to practice medicine in Texas. Also, it was in Texas that he saw and treated Boyd. The above statute does not apply to out-of-state doctors who are licensed medical practitioners I7Ü1 their respective states and whose medical examinations were done there. Herbert v. Travelers Indemnity Company, 239 So.2d 367 (La.App. 4th Cir.), writ refused, 256 La. 1150, 1151, 241 So.2d 253 (La.1970). Dr. Campbell’s deposition testimony was properly admitted.
The next claimed error was the trial court’s failure to give a special jury charge to the effect that the absence of symptoms before an accident and the presence of symptoms after an accident gives rise to a presumption that the accident caused the symptoms. Although the principle of law which Boyd relies on is a correct one, we find no error in this particular case in the failure to give the instruction in the precise language requested. It is established law that the trial judge must take into account the evidence in fashioning jury instructions. Williams v. Stevenson, 558 So.2d 1204 (La.App. 1st Cir.), writ denied, 564 So.2d 324 (La.1990).
In this ease there was competent medical evidence that disc protrusion in and of itself is commonplace in persons who do not suffer symptoms. Therefore, the mere presence of radiographic evidence of a disc protrusion establishes neither symptoms nor causation. Therefore, the only record basis for giving the charge was the plaintiff's own testimony. We find no abuse of discretion for the failure to give the requested charge. The subject was generally covered by the charges and counsel for plaintiff was allowed to freely argue a presumption. Moreover, Boyd did not object to the court’s jury instructions. La.Code Civ.P. art. 1793(C), requires a specific objection and the grounds of the objection before the failure to give a particular jury instruction can be assigned as error on appeal.
isThe remaining assignments of error can be discussed together. Boyd complains that the defendants’ trial conduct was improper in its intent to arouse the passion and prejudice of the jury against the plaintiff. She complains of prejudice by the allowance of evidence of drug abuse and mental illness which was mentally correlated to her injuries and the allowance of comment and discussion of what she called irrelevant and inflammatory evidence. She gives numerous specific examples of testimony which she complains were prejudicial because they were extrinsic evidence of specific events and acts allegedly calculated by the defendants as a method of attacking her character and credibility. Finally, she complains of the prejudicial effect of repeated references by the defendants at trial to the manner in which her prescription medications were administered and taken.
Our careful examination of this record does not substantiate these charges. Apparently in anticipation that plaintiff’s background might be exploited by the defendants in front of the jury, counsel for Boyd filed a motion in limine. The motion was heard and the trial judge was made aware exactly of the scope and nature of counsel’s fears. The trial judge cautioned counsel for the defendants at this hearing, and advised that a solid foundation would have to be laid for relevancy of any evidence having to do with drug addiction, or a mental condition. The judge said that it was his intent to keep from the jury prejudicial information that could be unduly biased.
In her brief on appeal, Boyd points to some eight instances where the defendants allegedly crossed the line. In their brief, in turn, the defendants point to five instances where evidence was excluded which they believed was relevant and not overly prejudicial. There were a number laof objections made during the trial by both sides. At a post-trial hearing the trial judge observed that it was counsel for defendants, not counsel for plaintiff, who seemed most disturbed by some of the evidentiary rulings.
We have examined this record with great care. Because plaintiff did in fact have a medically active history, on account of her numerous ailments, her medical history was germane to proof of an injury in this case. *608 We think that the trial judge conducted the trial with an evenhandedness that was highly commendable, especially given the sensitive nature of the subject matter and the frequency of the rulings he was required to make. His conduct of the trial was admirable, and, in our view, error free. It is apparent that the trial judgé carefully assessed the relevance of contested evidence, and considered its prejudicial effect and probative value under the balancing test set forth in La.Code Evid. art. 403.
This has been a difficult case to review. Although it was not assigned as error, we have studied this record to determine whether the jury was manifestly wrong. We are empowered to do so under La.Code Civ.P. art. 2164.
We are constrained to find clear error in the jury's failure to make some award to Boyd, because it is unreasonable to conclude, from the evidence presented, that she suffered no injury. Reviewing the undisputed evidence, the following facts are clear.
There was an accident. Boyd’s vehicle was hit from the rear. She went immediately by ambulance to an emergency room. She complained of low back pain and waited for several hours to be treated. A doctor saw her, administered medication, and released her. Six days later she saw her family physician, Dr. Kate Lee, still complaining | ipof back pain. She told Dr. Lee about the accident. Dr. Lee saw objective evidence of injury, tenderness at the L-5 level and muscle spasms. Dr. Lee had been seeing her for over a year and Boyd had never complained of back pain. In several visits following the accident, she still complained to Dr. Lee, who put her in the hospital and had tests run. She then saw an orthopedist who ran further tests. Both Dr. Lee and the orthopedist, Dr. Phillips, thought she had a ruptured disc caused by the accident.
The doctors who testified against her did not testify that she was not injured in the accident. Dr. Campbell had not seen her since 1987 and her accident was in late 1990. When Dr. Campbell saw her she was having back trouble. Dr. McDaniel did not see her until 1992. Although it was his opinion that she did not then have, and never had had, a ruptured disc with nerve root impingement, he suggested the need for further tests to explain her anterior leg pain and the possibility she suffered from some other back ailment. He left open the question of whether there might have been a relationship established by further tests, between the accident and her expressed symptoms.
In short, while there is medical conflict on the question of whether this minor accident caused a ruptured disc needing surgery, there is no conflict that she suffered some injury to her back from the accident. The fact finder’s decision that Boyd did not suffer a serious injury in this case was a reasonable one. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). The decision that she suffered no injury at all was unreasonable, and clear error.
We find that the evidence establishes that she suffered a lumbar strain, as she had experienced in the Inpast, and that some symptoms persisted for one and one-half years. For her pain and suffering we award $15,000 in general damages. We find no evidence to support an award of loss of wages, or future medical expenses. She will be awarded all medical expenses incurred in her treatment by Drs. Lee and Phillips, a total of $9,588.
For these reasons, the judgment is reversed. Judgment is rendered in favor of plaintiff, and against the defendants in the total amount of $24,588, with interest and all costs of court here and below.
REVERSED AND RENDERED.
SAUNDERS, J., dissents and assigns reasons.
DECUIR, J., dissents for reasons assigned by SAUNDERS, J.