785 So.2d 126 (2001)
Harvey W. VINES, Jr., Plaintiff-Appellant,
v.
Marci Leigh WOOD and Federated Mutual Insurance Company, Defendants-Appellees.
No. 34,555-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2001.
*127 Steven L. Rushing, Longview, Counsel for Appellant.
Cook, Yancey, King & Galloway by Sidney E. Cook, Jr., Shreveport, Counsel for Appellees.
Before STEWART, PEATROSS and KOSTELKA, JJ.
STEWART, J.
At issue in this appeal by the plaintiff, Harvey W. Vines, is the adequacy of the damages awarded by the jury for injuries sustained by Vines in an automobile accident. Vines argues that the jury erred in failing to award the full amount of medical expenses incurred, in granting an abusively low award for past pain and suffering, in granting an inadequate award for future medical expenses, and in failing to award *128 damages for future pain and suffering. For the reasons set forth herein, we amend the trial court's judgment to include the full amount of medical expenses incurred by Vines and to increase the award of general damages. We affirm the remainder of the judgment awarding future medical expenses.

FACTS
On December 24, 1997, while returning to his home in Jefferson, Texas at approximately 1:30 a.m., after an evening at the Casino Magic in Bossier City, Louisiana, Vines was involved in an automobile accident. The accident occurred on Interstate 20 in the area of Greenwood, Louisiana, near the state line. Vines was driving a borrowed 1984 LTD and traveling in a westerly direction in the right lane of travel. A vehicle driven by the defendant, Marci Leigh Wood, cut in front of Vines from the left lane and impacted the front end of his vehicle. The impact caused both vehicles to leave the roadway. Vines' vehicle spun around and slid sideways down an embankment until it came to rest across a concrete drainage ditch. Woods' vehicle came to rest some distance ahead near some trees. Damage to the vehicle driven by Vines included a bent fender and a hanging bumper. The vehicle was totaled.
Following the accident, Vines exited his vehicle without assistance. He did not require an ambulance. No injury was reported to the investigating officer. However, Vines testified that he told the officer that his neck was hurting. During the day following the accident, Vines began to experience pain in his lower back, at which time he sought medical assistance at the Good Shepherd Medical Center in Longview, Texas. Vines reported to the treating physician his involvement in the automobile accident and his medical history. Vines is a diabetic and has had a partial amputation of his left foot due to related vascular problems. He was disabled prior to the accident at issue. The treating physician, Dr. Gregg Harrington, diagnosed Vines with multiple sprains and contusions, prescribed medications for pain, and ordered x-rays which showed chronic spondylosis at L5-S1. Vines was referred to Dr. Harold L. Bolnick for follow-up treatment. Vines returned to Good Shepherd again on December 31, 1997, complaining of lower back pain and seeking more medication since he would be unable to see Dr. Bolnick until January 12, 1998. His discharge diagnosis was acute lumbar strain and spasm.
Thereafter, Vines began treatment for his lower back pain under Dr. Bolnick, who is board certified in anesthesia and pain management. Dr. Bolnick ordered an MRI which showed bilateral foraminal stenosis and some hypertrophic changes at L4-5 and L3-4. Medications for pain and inflammation were prescribed along with muscle relaxants and sleep aides. Dr. Bolnick also recommended physical therapy. From January 15, 1998 through March 16, 1998, Vines attended seventeen physical therapy sessions. The physical therapy discharge summary of March 16, 1998 indicates that Vines made significant progress. He was no longer experiencing pain with rest or activity, he had a normal gait and posture, he had full range of motion, and he had no tenderness upon palpitation. During the course of his treatment under Dr. Bolnick, Vines also underwent three epidural steroid injections on March 2, 1998, November 19, 1998, and January 18, 1999. At the time of trial, Vines was still under Dr. Bolnick's care.
Vines' claim for damages against Wood was tried before a jury on March 24, 2000. The parties stipulated the amount of medical expenses ($13,099.47) submitted by *129 Vines; however, Wood did not stipulate that the expenses were all incurred as a result of injuries sustained by Vines in the accident. There was no dispute as to the issue of Wood's liability. Accordingly, the trial court granted a directed verdict in favor of Vines on that issue. Vines' own testimony and the deposition of Dr. Bolnick were presented in support of his claim.
Vines testified regarding the events related above. Additionally, he testified that he did not recall any part of his body hitting the interior of the vehicle during the accident. Contrary to the good result indicated on the physical therapy discharge summary, Vines testified that physical therapy did not help his condition. He reluctantly admitted on cross-examination to refusing further physical therapy and chiropractic care when offered by Dr. Bolnick. Vines testified that he did not have the money to buy gas for the eighty mile round trip required to attend therapy. He also testified that he did not believe in chiropractic care. Vines stated that the epidural injections relieved his symptoms for only a few days. He asserted that all of his visits to Dr. Bolnick were scheduled because of his ongoing back pain, but he admitted that he was sometimes treated for additional problems during these visits. However, he related the additional problems to effects from medications prescribed by Dr. Bolnick. Vines testified that he has experienced pain mainly in his lower back with tingling sensations down his legs over several months.
Vines stated that he is no longer able to get around very much. However, he also admitted that, prior to the accident, he generally sat around and watched television. He occasionally went to the casinos to play slot machines, but he claims that he has not frequented these establishments as much since the accident. At the time of the accident, Vines lived alone. Although he has two children, he was not certain of their whereabouts.
Dr. Bolnick testified that Vines' initial complaint was lower back pain with decreased activity. Vines claimed that the pain began following the automobile accident. Dr. Bolnick would not say that Vines' lower back pain more probably than not resulted from the accident. However, he also stated that Vines' symptomology has been consistent from his initial visit and that he has no reason to dispute the history related by Vines. Dr. Bolnick reviewed his treatment of Vines. His testimony indicated that Vines experienced a decrease in pain around March and April of 1998, at which time his pain level was a one on a scale of one to ten. This was followed by an increase in pain over the next few months. A second epidural was scheduled for November 1998, because Dr. Bolnick believed that Vines had a positive response to the first one. However, in Dr. Bolnick's estimation, the second epidural was not as effective. Vines remained symptomatic. A third epidural was administered in January 1999. By March 1999, Vines condition had leveled off. Dr. Bolnick referred Vines to a neurosurgeon for a consultation; however, Vines was not found to be a candidate for surgery. With regard to Vines' future condition, Dr. Bolnick testified that Vines will continue to experience chronic pain and be on medication for some period of time. He will need to be treated on an incremental basis, possibly three to four times per year. Additionally, he may need one or two epidurals per year.
The defense presented the testimony of Dr. Carl Goodman, who qualified as an expert in orthopaedics and orthopaedic surgery. Dr. Goodman conducted an independent medical examination of Vines for the defense. Dr. Goodman recalled that *130 Vines reported that he only received two or three days of pain relief from the steroid epidurals and that physical therapy did not help. This latter claim was noted by Dr. Goodman to be inconsistent with the physical therapy discharge summary, which he believed indicated a successful completion of the therapy program. He also recalled that Vines reported pain only in his back. According to Dr. Goodman, Vines indicated that, prior to the accident, he had mild back pain which did not require medical intervention. Dr. Goodman performed a physical examination of Vines, but he did not review Vines' medical records. The examination revealed no muscle spasm or nerve impairment. However, Vines did exhibit limited movement when bending and twisting, and he reported lower back pain upon being lightly touched. Dr. Goodman's impression of Vines' condition was that he suffered a lumbar strain and sprain from the accident. It was Dr. Goodman's opinion that both the chronic spondylosis shown in the x-ray taken December 24, 1997 and the hypertrophic changes resulting in minimal bilateral foraminal stenosis at the L4-5 shown in the MRI taken January 15, 1998 predated the accident at issue. Dr. Goodman questioned the use of epidurals to treat Vines' condition, noting that such treatment is more commonly used when there is nerve pain. However, he conceded that if a patient wants to try the epidural, he would agree to give it a try. Sometimes epidurals help, and sometimes they do not. He did not feel that pain relief for only two or three days following the epidural, as reported by Vines, was a successful result. Dr. Goodman's recommendation for treating Vines' back condition was "exercise, exercise, exercise." He explained that exercise would alleviate the disk condition by strengthening the muscles that support the back. Consequently, exercise therapy, rather than heat, massage or electrical stimulation, was his recommended form of physical therapy for Vines.
At the close of trial, the jury returned a verdict awarding Vines $3,275 for past medical expenses; $6,615 for future medical expenses; and $2,510 for past pain and suffering. The total award was $12,400. No separate award was granted for future pain and suffering. In response to this award, Vines filed a motion for judgment notwithstanding the verdict and a motion for a new trial on the grounds of the inadequacy of the award. The trial court denied both motions. This appeal followed.

DISCUSSION
Vines challenges the adequacy of the amounts awarded for both special and general damages. As to the awards for special damages, Vines argues that the jury abused its discretion by awarding less than the full amount of medical expenses stipulated to by the parties. Vines contends that all visits to Dr. Bolnick were related to his back injury, that he followed the regimen recommended by Dr. Bolnick, and that he did not obtain any treatment in bad faith. Additionally, Vines argues that the award for future medical expenses is inadequate.
Both medical expenses and future medical expenses are proper items of damages. Gladney v. May, 29,373 (La. App.2d Cir.5/7/97), 697 So.2d 1022, XXXX-XXXX, writ denied, 97-2417 (La.1/09/98), 705 So.2d 1101. Recovery of such damages must be confined to expenses related to the accident. Id. The trier of fact's discretion in assessing special damages is more limited than when assessing general damages. Eddy v. Litton, 586 So.2d 670 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1203 (La.1992). A plaintiff who pleads special damages must produce some *131 evidence by which that loss can be reasonably measured. This burden is not met by proof of a potential special damage or loss. Id. Additionally, a jury is not required to accept totally a plaintiff's perception of the degree and magnitude of his injuries. Phiratsamy v. Pipes, 27,209 (La.App.2d Cir.8/23/95), 660 So.2d 172.
A jury errs when it fails to award the full amount of medical expenses proven by the plaintiff. Chambers v. Graybiel, 25,840 (La.App.2d Cir.6/22/94), 639 So.2d 361, writ denied, 94-1948 (La.10/28/94), 644 So.2d 377; Sumrall v. Sumrall, 612 So.2d 1010 (La.App. 2d Cir.1993). Even expenses for over-treatment or unnecessary treatment must be paid by the tortfeasor, unless such treatment was incurred by the plaintiff in bad faith. Day v. Silver Oak Cas., Inc., 28,566 (La.App.2d Cir.8/21/96), 679 So.2d 486; Chambers v. Graybiel, supra; Sumrall v. Sumrall, supra; Starnes v. Caddo Parish School Board, 598 So.2d 472 (La.App. 2d Cir. 1992).
In this instance, we find that the jury erred in awarding only $3,275 of the medical expenses incurred by Vines and stipulated to by the parties. Wood argues two points in support of the jury's award for medical expenses. First, Wood argues that Vines was in bad faith in refusing to continue physical therapy and in requesting the steroid epidurals that only provided a few days of relief. Wood also contends that Dr. Bolnick treated Vines for problems unrelated to injuries sustained in the accident. We find no merit in either argument.
There was no showing that Vines incurred any treatment in bad faith. While it did appear that physical therapy was beneficial to Vines' condition, it must be noted that his discharge from physical therapy occurred soon after Vines underwent the first steroid epidural. According to Dr. Bolnick, the good progress noted in the physical therapy discharge summary could be consistent with a good result from the epidural, and Vines' subsequent increase in pain during the following months would be consistent with the effects of the epidural wearing off. Dr. Bolnick also testified that a second epidural was warranted due to Vines' good response to the first one. Even Dr. Goodman testified that he would try the epidural at a patient's request, and that such treatment sometimes works and sometimes does not. While the jury may not have agreed with Vines' course of treatment, it has no discretion to limit awards so as to deny recovery for legitimate expenses incurred.
Our review of the medical records and invoices submitted into evidence reveals that the expenses stipulated to by the parties were incurred by Vines for treatment of his back pain. We did see mention of other medical problems in a few of Dr. Bolnick's medical reports. However, these medical reports clearly indicate that Vines' chief complaint was his back pain and that this complaint was addressed at each visit. Any reference to other medical problems was minimal. Furthermore, the majority of Vines' medical expenses were related to his visits to the Good Shepherd hospital following the accident, the physical therapy, and the three injections. The amount awarded by the jury is not even sufficient to cover these major expenses which were clearly related to Vines' back injury. Accordingly, we find that Vines is entitled to recover medical expenses in the amount of $13,099.47.
Having determined that Vines is entitled to recover the full amount of medical expenses incurred for treatment of his back injury, we must determine whether the jury abused its discretion in awarding $6,615 for future medical expenses. To *132 recover future medical expenses, it must be demonstrated that such expenses more probably than not will be incurred. Gladney v. May, supra; Phiratsamy v. Pipes, supra. Such awards, which are highly speculative and not subject to calculation with mathematical certainty, will not be made for future medical expenses which may or may not occur in the absence of testimony that they are indicated and setting out the probable costs. Kessler v. Southmark Corp., 25,941 (La.App.2d Cir.9/21/94), 643 So.2d 345.
The evidence presented at trial indicates that Vines will require some ongoing medical treatment, either physical therapy as recommended by Dr. Goodman or medication with occasional steroid injections as suggested by Dr. Bolnick. No time limit was suggested by either doctor to indicate how long Vines would be expected to undergo treatment for his back injury. Dr. Bolnick merely stated in his deposition that Vines would continue treatment for some time. Considering the established fact that Vines will need some form of future treatment for some time in light of the speculative nature of awards for future medical expenses, we cannot say the jury abused its discretion in awarding $6,615 for future medical expenses. Accordingly, we affirm this award.
Next, we address Vines' contention that the award for general damages was inadequate. The jury awarded $2,510 in general damages. The award was designated as damages for past pain and suffering. No separate award was made for future pain and suffering even though the jury awarded damages for future medical expenses. In support of his argument for an increase in general damages, Vines points out that he was still on medications for pain at the time of trial, that he has not been able to get around as much, that he has been depressed, and that he has lost weight. Vines also argues that it was error for the jury to fail to award damages for future pain and suffering since it awarded damages for future medical expenses.
In assessing damages in cases of offenses, quasi-offenses and quasi-contracts, much discretion is left to the trier of fact. La.C.C. art. 2324.1. The role of the appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the trier of fact's exercise of discretion in light of the particular facts and circumstances of the case at issue. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Reck v. Stevens, 373 So.2d 498 (La.1979). The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured party is a clear abuse of the discretion of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d at 1260, 1261 and cases cited therein. Resort to prior awards is appropriate only after determining whether an abuse of discretion occurred and then only for the purpose of determining the highest or lowest point which is reasonably within the trial court's discretion. Id. In short, the discretion of the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., supra; Reck v. Stevens, supra; and Day v. Silver Oak Cas., Inc., supra. To determine whether an award is inadequate, the evidence must be viewed in the light most favorable to the defendant. Manuel v. State Farm Mutual Automobile Company, 30,765 (La.App.2d Cir.8/19/98), 717 So.2d 277; Graham v. Edwards, 614 So.2d 811 (La.App. 2d Cir.1993), writ denied, 619 So.2d 547 (La.1993).
*133 General damages cannot be fixed with pecuniary exactitude. Gladney v. May, supra. Such damages are intended to compensate for mental or physical pain and suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or others losses of life or lifestyle which cannot be definitively measured in monetary terms. Beasley v. Yokem Toyota, 33,805 (La.App.2d Cir.8/23/00), 767 So.2d 149; Gladney v. May, supra; Kessler v. Southmark Corp., supra. The primary objective of general damages is to restore the injured party, to the extent possible, to his or her state immediately preceding the injury. Severity and duration are factors to be considered in assessing quantum for pain and suffering. Stegall v. State Farm Mutual Automobile Ins. Co., 29,986 (La.App.2d Cir.10/29/97), 702 So.2d 66; Thibodeaux v. USAA Cas. Ins. Co., 93-2238 (La.App. 1st Cir.11/10/94), 647 So.2d 351.
It is undisputed that Vines incurred a back injury as a result of the accident. Both the x-ray and MRI show objective evidence of injury. While Dr. Goodman stated his belief that the injuries shown by these tests likely predated the accident, he also testified that Vines suffered a lumbar strain and sprain from the accident. This same diagnosis is recorded in the medical records from Good Shepherd. While Vines has experienced pain since incurring his injury, the evidence indicates that the degree of pain has fluctuated. Dr. Bolnick's testimony indicates that as of May 1998, Vines' pain level was reported to be one, the lowest level on a scale of one to ten. This could be attributable to either the steroid epidural or the physical therapy. However, it is notable that Vines' condition following the subsequent epidurals did not exhibit such remarkable improvement. After May 1998, Vines began reporting increased levels of pain, but his condition had, according to Dr. Bolnick, leveled off by the time of trial. The evidence also indicates that Vines is not a candidate for surgery. His future treatment may involve either physical therapy or continuation of pain medications with one to two epidurals per year until his complaints subside.
The evidence further shows that Vines' injury has had little impact on his life and lifestyle. Vines testified that, since the injury, he has not been able to get around as much. He did not elaborate on this point, other than saying that he can no longer help his parents clean lots for extra money and that he has not been to the casinos as often since the accident. However, the evidence also shows that, prior to the accident, Vines lifestyle consisted largely of watching television, occasionally visiting the casinos in Shreveport, and fishing. There was no evidence that the injury sustained by Vines has had great impact on his day-to-day existence. Vines was disabled prior to the accident at issue and was not employed. Vines claimed that he suffered depression as a result of his injury; however, Dr. Bolnick was not sure of the cause of the depression as Vines was experiencing other problems at the time, including impotence. Review of the medical records does not indicate that weight loss was a negative consequence of Vines' injury, although Dr. Bolnick testified that he did not encourage Vines to lose weight.
Viewing the evidence in the light most favorable to Wood, we find that the jury abused its discretion in awarding only $2,510 in general damages. Vines sustained a soft tissue back injury from the accident that has caused him pain in excess of two years. He underwent physical therapy and steroid injections. He was still in Dr. Bolnick's care at the time of trial and would continue to be under his care for some time. The testimony of both *134 Dr. Bolnick and Dr. Goodman was that Vines would require some future treatment. Our review of soft tissue injury cases involving lumbar strain/sprain injuries reveals a wide diversity of awards for this common injury.[1] Considering the particular facts and circumstances of this case, including the minimal impact of the injury on Vines' lifestyle, we find that an award of $7,500 in general damages is appropriate compensation for the pain and suffering, both past and future, experienced by Vines. We believe that this is the lowest amount which the jury could have reasonably awarded under the circumstances of this case. Accordingly, we amend the trial court's judgment to increase the award of general damages to $7,500.

CONCLUSION
For the reasons expressed, we amend the judgment of the trial court to increase the award of damages for past medical expenses to the amount of $13,099.47 and to increase the award of general damages to $7,500. The trial court's judgment is otherwise affirmed. Costs are assessed to Wood.
AMENDED AND AFFIRMED.
NOTES
[1] For the lower range of awards see Marcum v. Johnson, 32,634 (La.App.2d Cir.1/26/00), 750 So.2d 1186, awarding $5,500 for a soft tissue injury to neck and lower back with lingering pain at trial, conservative treatment, and minimal impact on lifestyle; Rabathaly v. Breaux, 99-244 (La.App. 5th Cir.7/27/99), 738 So.2d 1182, awarding $5,000 for herniated lumber disks and continuing pain at time of trial, surgery recommended but declined by plaintiff; Aycock v. Jenkins Tile Co., 96 2348 (La.App. 1st Cir.11/7/97), 703 So.2d 117, writ denied, 97-3056 (La.3/20/98), 715 So.2d 1198 awarding $4,000 in general damages for lumbar strain injury with an MRI showing bulging disk, no ongoing problems at time of trial and no severe pain; Johnson v. Automotive Cas. Co., 27,362 (La.App.2d Cir.9/27/95), 661 So.2d 633, awarding $4,000 for soft tissue neck in jury with treatments including physical therapy and three steroid injections with continuing pain at trial.

For the higher range of awards see Marie v. John Deere Ins. Co., 96-1288 (La.App. 1st Cir.3/27/97), 691 So.2d 1327, awarding $20,750 for cervical and lumber strain with disk protrusion treated with chiropractic care, physical therapy, and epidural injection and requiring possible surgery; Gage v. Potts, 94-1542 (La.App. 1st Cir.4/7/95), 653 So.2d 1183, awarding $15,000 for cervical and lumbar strain requiring one year of conservative treatment including physical therapy and chiropractic care; Boyd v. Allstate Ins. Co., 93-999 (La.App. 3rd Cir.5/11/94), 640 So.2d 603, writ denied, 94-1447 (La.9/23/94), 642 So.2d 1292, awarding $15,000 for lumbar strain with pain persisting one and one-half years; James v. Town of Roseland, 610 So.2d 1011, awarding $10,000 for acute lumbar strain with nerve injury which causes persistent back pain and prevents plaintiff from working as laborer.