914 So.2d 1186 (2005)
Cheryl YOUNGBLOOD, et al., Plaintiffs-Appellees
v.
Arnold Wayne LEE, Desoto Parish Sheriff's Department & Clarendon National Ins. Co., Defendants-Appellants.
No. 40,314-CA.
Court of Appeal of Louisiana, Second Circuit.
November 2, 2005.
Rehearing Denied December 8, 2005.
*1188 Cheryl Youngblood, Pro Se.
Lee H. Ayres, Shreveport, for Appellant.
Before WILLIAMS, CARAWAY and LOLLEY, JJ.
*1187 LOLLEY, J.
This personal injury action arises from the Eleventh Judicial District Court, Parish of DeSoto, State of Louisiana. Rodney Arbuckle, in his official capacity as Sheriff of DeSoto Parish, Deputy Arnold Wayne Lee, and Clarendon National Insurance Company ("appellants") appeal a judgment in favor of Cheryl and Kenneth Youngblood and their minor child, Alex Youngblood. For the reasons assigned, the judgment is affirmed.

FACTS
In July of 2002, Cheryl Youngblood and her son, Alex, were involved in a motor vehicle accident with Sergeant Arnold Lee, a supervisor with the DeSoto Parish Sheriff's Department.[1] At the time of the accident, Cheryl and Alex were in route to a local store. She was traveling southbound on Louisiana Highway 3103 ("Kings Hwy."), which intersects with Hwy. 84, and was proceeding into the intersection after having stopped at a stop sign. Sgt. Lee was traveling on Highway 84, responding to an emergency call involving a 16-year-old trapped in a burning vehicle. He was traveling westbound on Hwy. 84 at a high rate of speed when he collided into Cheryl's vehicle. The evidence depicts the Kings Hwy. intersection to be located just past an elevation and at a curve in Hwy. 84.
Following the accident, Cheryl and Alex were taken to the hospital for treatment in the emergency room. They were both released shortly thereafter. Cheryl sustained non life-threatening injuries, including a broken collarbone, an injury to her arm, and some trauma to her head. She contends to continue having migraine headaches. Alex received a laceration to his head requiring stitches.
Subsequently, the Youngbloods filed suit. In June 2004, the trial court allowed the Youngbloods' attorney to withdraw and gave them ten days to obtain new counsel. The matter was set for trial on December 13, 2004. On the day of trial, the Youngbloods made a motion for continuance to obtain counsel, which motion was declined. The trial of the matter commenced as scheduled with the Youngbloods proceeding pro se. After the trial, judgment was rendered in favor of the Youngbloods for a total damage award of $76,507.09, broken down as follows: past medical expenses for Cheryl of $5,337.35; general damages for Cheryl of $40,000.00; past medical expenses for Alex of $5,169.74; general damages for Alex of $10,000.00; property damage for Kenneth and Cheryl of $15,000.00; and, loss of consortium for Kenneth of $1,000.00. This appeal by Sheriff Arbuckle, Sgt. Lee, and Clarendon ensued.

DISCUSSION

Exclusion of expert witness
On appeal, the appellants argue that the trial court committed reversible error by excluding its expert witness from testifying at trial. Considering the particular facts of this case and for the following *1189 reasons, we see no abuse of discretion by the trial court.
As already noted herein, although the Youngbloods had initially been represented by counsel in this litigation, at some point during the course of litigation their attorney withdrew. The trial of the matter went forward after the Youngbloods' motion to continue was opposed by the appellants and ultimately denied by the trial court. On the morning of the trial, counsel for the appellants apparently supplied Kenneth with copies of documentation prepared by the appellants' expert in the field of accident reconstruction, Richard Robertson. Appellants contend that they had responded to discovery requests and informed the Youngbloods that they had retained an expert that might be called at trial, although this is not reflected in the record. It is unclear whether appellants disclosed the specific name of their expert or just the retention of an expert. It does not appear disputed, however, that the appellants did not provide the Youngbloods, previous to the morning of the trial, with any documentation prepared by Robertson. Based on those circumstances, the trial court determined that Robertson would not be allowed to testify at the trial. His testimony, as well as the exhibits in connection with his testimony, were proffered by the defense.
Notably, La. C.C.P. art. 1428(1) provides:
A party is under a duty seasonably to supplement his [discovery] response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters, and the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
When the Youngbloods filed suit, they also propounded discovery requests against the defendants, one of which inquired as to the name(s) of experts that might be called at trial, as well as "all testing, examinations, evaluations, and the results of said testing, examinations and evaluations...." performed by said expert(s) to be called at trial. Appellants contend now, as they did at trial, that they had disclosed the identity of their expert previously to the Youngbloods, who had every opportunity to depose Robertson. Whereas we do not question the veracity of those assertions, the record does not reflect that fact, because those discovery responses are not part of the record. As stated, it appears undisputed that the appellants did not supply the Youngbloods with copies of the expert documents until the morning of the trial  December 13, 2004.
Our review of the proffered expert documents show that those actually prepared by Robertson (i.e. defense exhibits numbered 3 and 5) and having a substantive nature are dated November 17, 2004  almost a full month prior to the trial of this case. We appreciate that there is no requirement that the rules of law and procedure be relaxed or suspended for pro se litigants. Nor should the rules be applied more quickly or severely to a pro se litigant than to an attorney. However, when dealing with a pro se litigant, it is incumbent upon the members of the bar to well represent their profession and behave with the utmost professionalism so as to avoid any appearance of attempting an unfair advantage over their pro se adversary. Considering the duty to supplement discovery responses imposed under La. C.C.P. art. 1428, which the appellants failed to adhere to without any good reason, combined with the facts that the Youngbloods were proceeding pro se and *1190 the appellants were zealous to proceed with the trial, we do not believe the trial court abused its discretion in refusing to allow Robertson to testify.
Moreover, the trial judge has great discretion in the manner in which proceedings are conducted before the trial court, and it is only upon a showing of gross abuse of discretion that appellate courts have intervened. Cooper v. Lacorte, XXXX-XXXX (La.App. 4th Cir.05/17/00), 775 So.2d 4, amended on other grounds, XXXX-XXXX (La.App. 4th Cir.01/31/01), 775 So.2d 704, citing, La. C.C.P. art. 1631 and Harris v. West Carroll Parish School Bd., 605 So.2d 610 (La. App. 2d Cir.1992), writ denied, 609 So.2d 255 (La.1992). So considering, and despite the lack of a formal objection by the Youngbloods regarding Robertson's testimony and exhibits, the trial court was within its discretion in deciding to exclude same. In reaching its decision, the trial court noted that it considered it "an unfair thing that [appellants] have done giving the reports to [the Youngbloods] this morning...." Such a conclusion was clearly not a gross abuse of discretion considering the particular facts of this case and certainly not reversible error.

Sgt. Lee's negligence under La. R.S. 32:34
In another assignment of error, the appellants contend that the trial court committed reversible error when it found that Sgt. Lee acted with "reckless disregard for the safety of the public."

Standard of Review
An appellate court may reverse the findings of the trial court only when a reasonable factual basis does not exist for the finding and the finding is clearly wrong or manifestly in error. Stobart v. State, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Pope v. Prunty, 37,395 (La.App.2d Cir.08/20/03), 852 So.2d 1213, writ denied, 2003-2496 (La.11/26/03), 860 So.2d 1137. Though an appellate court may surmise that its own evaluations and inferences are reasonable, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Goings v. State Through Dept. Of Public Safety and Corrections, 94-1386 (La.01/17/95), 648 So.2d 884; Pope, supra. When findings are based on determinations regarding the credibility of witnesses, the manifest error standard accords great deference to the trier of fact's findings, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what was said. Where a fact finder's conclusion is based on its decision to credit the testimony of one of two or more witnesses, that determination can virtually never be manifestly erroneous or clearly wrong. Rosell, supra; Pope, supra.
The task of the reviewing court is not to assess whether the trial court's factual findings are right or wrong in an absolute sense, nor to determine whether the court of appeal or another trier of fact might reasonably reach a different conclusion from the same evidence, but solely to ask whether this fact finder's resolution of the conflicting evidence was reasonable in light of the record as a whole. See Freeman v. Poulan/Weed Eater, 93-1530 (La.01/14/94), 630 So.2d 733.

Standard of care under La. R.S. 32:24
Louisiana R.S. 32:24 sets forth the privileges, conditions and the standard of care required by emergency vehicle drivers when responding to an emergency call. It provides:

*1191 A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
In determining the proper standard of care that La. R.S. 32:24 imposes on the driver of an emergency vehicle, the Louisiana Supreme Court in Lenard v. Dilley, XXXX-XXXX (La.01/15/02), 805 So.2d 175, found that it contains two alternate standards, depending on the circumstances. If subsections A, B and C of La. R.S. 32:24 are met, an emergency vehicle driver will be held liable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver's conduct does not fit subsections A, B and C of La. R.S. 32:24, such driver's actions will be gauged by an ordinary negligence standard. Id. at 180.
As noted in Lenard:
"Due care" is synonymous with ordinary negligence. "Reckless disregard," however, connotes conduct more severe than negligent behavior. "Reckless disregard" is, in effect, "gross negligence." Gross negligence has been defined by this court as "the want of even slight care and diligence. It is the want of that diligence which even careless men are accustomed to exercise."
Id.
Appellants agree that because the trial court determined that Sgt. Lee was responding to an emergency call with his lights and siren activated, the correct standard of reckless disregard or gross negligence was applied to Sgt. Lee's actions. However, they argue that the Youngbloods failed to meet the burden of proving that Sgt. Lee's actions constituted a reckless disregard for public safety or that Sgt. Lee was grossly negligent. Applying the stated standard of review and for the following reasons, we do not agree with the appellants that the trial court's conclusion was manifestly erroneous.
As Sgt. Lee testified at trial, on the date of the collision he had been in the sheriff's office performing paperwork when he overheard an emergency dispatch to the patrolling deputy. Sgt. Lee, although he testified as to not knowing the exact proximity of the patrolling deputy, believed he was closer to the scene and called that deputy off so he could take the call. In so doing, he headed to the scene in his dark *1192 green patrol unit with activated lights and siren. On this particular vehicle, the lights were not roof mounted  they were installed in the grille of his vehicle. Of some note, Sgt. Lee testified that as he traveled through the town of Mansfield during this response call, he stopped at a stop sign and four signal lights.
At the time of impact, Sgt. Lee's emergency lights and siren were activated. As Sgt. Lee drove west on Hwy. 84, he passed a Wal-Mart store and began to approach the Kings Hwy. intersection. Sgt. Lee testified that he was "several hundred feet" away from the intersection when he first saw Cheryl's vehicle and that he watched Cheryl "roll to a stop at the stop sign" and then proceed directly across Hwy. 84. In an effort to avoid colliding with the Youngblood vehicle, Sgt. Lee braked and swerved across the centerline of Hwy. 84 into the eastbound lane where his vehicle struck the Youngblood vehicle. It was Sgt. Lee's testimony that Cheryl saw him coming, and he looked at her "eye-to-eye." On the police accident report which is attached hereto as Appendix "A," Sgt. Lee's speed was noted as 65 m.p.h. in a posted speed zone of 45 m.p.h.
Cheryl's testimony contradicts Sgt. Lee's. Contrary to his assertion that he saw her roll up to the intersection and then stop, she testified as to being stopped at the intersection for some time. She described reaching the intersection at Hwy. 84 and coming to a complete stop. She stated that she looked both ways and had to wait at the stop sign due to heavy traffic on the highway. She remembered conversing with her son "for a good little while before we finally [had] the go-ahead to go across because of the clear traffic."
Additionally, Cheryl recalled that the windows of the car were rolled up and the air-conditioner was on (it was July). She also stated that she had sunglasses on. Finally, she testified that she did not hear or see Sgt. Lee approaching her.
At the trial, the trial court considered the diagram included on the police accident report prepared subsequent to the accident (Appendix "A"). In questioning whether Sgt. Lee acted in reckless disregard of the public safety, the trial court saw as most decisive the fact that Sgt. Lee hit Cheryl's vehicle while she was in the eastbound lane of Hwy. 84. As noted by the trial court, Cheryl was able to cross two lanes of traffic (one of which Sgt. Lee was lawfully traveling in), before Sgt. Lee swerved into her lane and collided with her vehicle. The trial court attributed the collision to Sgt. Lee's high rate of speed and his misguided attempt at evading the collision  a maneuver which, incidentally, placed him in the illegal lane for oncoming traffic. Undoubtedly, the trial court gave greater credibility to Cheryl's testimony that she did not see or hear Sgt. Lee approaching the intersection. Given the facts of this case as testified to by the parties, such a finding is not unreasonable or manifestly erroneous, especially considering that Cheryl was well across the lane of traffic in which Sgt. Lee was traveling. It is also reasonable that she did not see Sgt. Lee's vehicle as it was not readily identifiable as a police vehicle  it was dark green and did not have lights on top, only in the grill. Additionally, the fact that Cheryl had her windows up and air-conditioning on supports her claim of not hearing Sgt. Lee's vehicle  even though his siren was apparently on. Whereas La. R.S. 32:24 B(3) allows an emergency vehicle to exceed the speed limit, such are still imposed with the duty of not endangering life or property. Sgt. Lee failed to adhere to said duty under these facts. Certainly the trial court judge, as fact-finder, was in a more apt position to consider the witness *1193 testimony and reach this conclusion, which, in this case, was in no way unreasonable. We find no manifest error in the trial court's determination on this issue.

CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of Cheryl and Kenneth Youngblood is hereby affirmed, with costs of these proceedings assessed to the appellants.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, GASKINS, CARAWAY, MOORE, and LOLLEY, JJ.
Rehearing denied.

*1194 Appendix "A"

NOTES
[1] Sgt. Lee is no longer employed by the sheriff's department.