935 So.2d 758 (2006)
Ryan HOLFORD, Plaintiff-Appellee
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellant.
No. 41,187-CA.
Court of Appeal of Louisiana, Second Circuit.
June 28, 2006.
*759 Lemle & Kelleher, L.L.P., by Dale G. Cox, Shreveport, for Appellant.
W. Brett Cain, Shreveport, for Appellee.
Before GASKINS, CARAWAY and MOORE, JJ.
CARAWAY, J.
This case presents a dispute over the trial court's discretion in fixing general damages for the plaintiff who suffered a back injury from a rear-end automobile collision. The trial court's ruling determined that the injury resulted in a chronic condition. Finding support in the record for that ruling, which the appellate court should rarely disturb, we affirm the trial *760 court's exercise of its discretion for the award of general damages.

Facts
On December 8, 2002, around midnight, 24 year-old Ryan Holford ("Holford") was rear-ended by a vehicle registered to Karen Cowden. The driver of Cowden's vehicle drove away from the accident but Holford obtained the license plate number. About a half-hour later, at 12:25 a.m., Holford was triaged in the Emergency Room at Willis-Knighton's Bossier Medical Center for upper back and neck pain. The nurse's note described Holford's pain as "provoked by movement, dull and constant," and quantified the pain as 7 on an intensity scale ranging from 0 to 10. A physician examined Holford at 1:45 a.m. and diagnosed acute right trapezius strain  MVA. Holford was discharged at 2:05 a.m. and referred to his primary care physician for follow-up if his symptoms persisted for more than 3 or 4 days. Holford missed 5 days of work immediately after the accident and a total of 14 days of work before the trial. At the time of trial, he had been employed by Swepco for 8 years. He testified that he also worked a second part-time job to help with his wife's education expenses.
Matters of record show that Holford's first post-accident visit to his family doctor occurred about 3 weeks later. He saw Dr. Wayne Barksdale on December 26, 2002, complaining of body aches, sore throat and cough and was diagnosed with an upper respiratory infection. Holford has insulin dependent diabetes since childhood and is treated by an endocrinologist for this disease.
Holford went to Dr. Barksdale again on February 10, 2003, complaining of recurrent back pain and vomiting. Dr. Barksdale's progress note contained Holford's description of the accident:
[Holford] was involved in an MVA on December 8th, hit and run accident. He was stopped at a light. A car ran into him from behind. He put his car in park and got out. The car ran off. He got the license plate and did catch who hit him from behind but nothing has been done yet in this regard. His back has hurt him ever since. He went to the ER at W-K Bossier. No x-rays were done. Describes as being pain in his lower lumbar area. No radiation of pain down his legs. Mainly a constant pain when he lies down at night and first gets up in the morning. Not had any history of any prior back trouble. States he does jump a lot of fences and does a lot of walking for his job for Swepco as a meter reader. . . .
After obtaining lumbar and spine x-rays, Dr. Barksdale diagnosed lower back syndrome and viral gastritis, and wrote, "I suspect he probably has just strained his back." Holford returned about 5 weeks later, on March 19, 2003, for unresolved lower and mid-back pain. An MRI of the lumbar sacral spine was scheduled for the next day. The radiology report disclosed:
. . . At T11-2 (sic) level, there is some disc space narrowing with loss of signal involving this disc. There is mild generalized disc bulging at T11-12 level causing mild effacement of the dural sac. There is mild generalized disc bulging at L1-2 level causing mild effacement of the dural sac . . .
IMPRESSION: Mild disc bulging T11-12 and L1-2 levels.
Dr. Barksdale's follow-up progress note after Holford's MRI states:
3/25/03 . . . In light of his MRI findings, I am going to refer him to Physical Therapy. He is wanting to know if the accident could have caused his problem and I have told him that it is doubtful that it caused the mild disc bulging that *761 we are seeing at this time, but it for sure could have aggravated the preexisting problem. . . . He is going to do his physical therapy and will follow up here afterwards. If he is still having problems, I will refer him to Neurosurgery for further evaluation.
Holford had physical therapy 3 times between March 27 and April 3, 2003, when he discontinued treatment. The subjective assessment portion of the physical therapy notes stated:
. . . [Holford] describes his pain as being around the intra scapular going down to the mid lumbar region. Patient states he is typically worse with sitting type activities and feels better when he gets up and moves around. He does report that when he walks for 1 or 2 hours, which he does routinely at work, the pain increases again as well. . . . He is presently taking Lortab at night for pain relief as well as Vioxx during the day.
On May 21, 2003, Holford saw Dr. Barksdale again for complaints of mid-thoracic back pain secondary to MVA. The progress note indicated "his symptoms are basically the same. His back is better, but still does have some lingering symptoms." Dr. Barksdale's plan states "I told Ryan today that I really do not have any further recommendations with regard to his back." On August 19, 2003, the nurse's note reflects that Holford requested a refill for a Medrol dose pack prescribed for back pain.
On October 13, 2003, Holford visited the doctor again for continued "low back pain." Dr. Barksdale writes: "I told Ryan on his last visit in May there is really nothing else I can offer him other than physical therapy and back exercises. I told him he cannot take pain pills on a constant basis because of the addictive potential of the medication. . . . I have written Lortab 7.5 mg # 30 with no refill. He is to take this medication on a very sparing basis and is aware of the addictive potential of this medication."
On November 24, 2004, Holford sued appellant, Allstate Insurance Company ("Allstate"), his uninsured/under insured motorist carrier, in Shreveport City Court. Cowden's insurer, Progressive Insurance Company, had already tendered its $10,000 policy limit. Allstate tendered $2,000 on February 6, 2004. On July 1, 2005, Allstate deposed Holford.
Thereafter, Allstate set the matter for trial, which occurred on September 20, 2005. The medical records reviewed above were presented as evidence. Holford's direct testimony described his injuries as follows:
Q. . . . [W]as there some point where Dr. Barksdale made some type of a final diagnosis for you about your back?
A. He just told me that I had two bulging discs and all that and said there was nothing he could really do about it except prescribe pain medicine.
Q. . . . And did he ever tell you that you suffered from chronic back pain?
A. Yes sir.
Q. . . . Now before this accident occurred had you had any problems with your back?
A. No sir.
Q. . . . Had you had any treatment for back pain?
A. No sir.
Q. . . . And as I understand your testimony Dr. Barksdale told [you] that the only thing he could do for you was prescribe pain medication. Is that correct?
A. Yes sir.
* * *

*762 Q. Did you tell Dr. Barksdale that your were still having back trouble after that visit in October?
A. I tell him periodically but he just tells me the only thing that he can do is give me pain medicine.
* * *
Q. Are you still having back pain?
A. Yes sir.
The trial court took the matter under advisement and rendered its opinion on October 31, 2005. The court determined a total general damage award of $25,000. Judgment was signed for $13,000 plus legal interest on November 17, 2005. Allstate suspensively appeals the judgment.

Discussion
Allstate argues that Holford failed to prove the causal relationship between his injury and the accident and that the trial court's award for general damages must be reversed. Alternatively, Allstate claims that the amount of damages awarded should be reduced.
An appellate court may reverse the findings of the trial court only when a reasonable factual basis does not exist for the finding and the finding is clearly wrong or manifestly erroneous. Stobart v. State, through Dep't of Transp. & Dev., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Though an appellate court may surmise that its own evaluations and inferences are reasonable, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Pope v. Prunty, 37,395 (La.App. 2d Cir.8/20/03), 852 So.2d 1213, writ denied, 03-2496 (La.11/26/03), 860 So.2d 1137. When findings are based on determinations regarding the credibility of witnesses, the manifest error standard accords great deference to the trier of fact's findings, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what was said. Youngblood v. Lee, 40,314 (La.App. 2d Cir.11/2/05), 914 So.2d 1186, writ denied, 06-0088 (La.4/17/06), 926 So.2d 522; Pope v. Prunty, supra; Hayes v. Maxey, 35,294 (La.App. 2d Cir.12/28/01), 803 So.2d 466. The task of the reviewing court is not to assess whether the trial court's factual findings are right or wrong in an absolute sense, nor to determine whether the court of appeal or another trier of fact might reasonably reach a different conclusion from the same evidence, but solely to ask whether this fact finder's resolution of the conflicting evidence was reasonable in light of the record as a whole. Youngblood v. Lee, supra; Pope v. Prunty, supra.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the complained-of injuries. Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615 (La.2/20/95), 650 So.2d 757; Methvin v. Ferguson, 35,138 (La.App. 2d Cir.9/26/01), 796 So.2d 712. The test for determining this causal relationship is whether the plaintiff proved through medical testimony that it was more probable than not that the subsequent injuries were caused by the trauma suffered in the accident. Methvin v. Ferguson, supra. When the accident victim was in good health before the accident, and after the accident shows that a disabling injury manifested itself and that there is a reasonable possibility of a causal connection between the injury and the accident, it is presumed, subject to rebutting evidence, that the accident caused the disabling injury. Methvin v. Ferguson, supra; Boykin v. Washington, 401 So.2d 488 (La.App. 2d Cir. 1981).
*763 In making damage awards, the discretion of the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp. 623 So.2d 1257 (La.1993). General damages cannot be fixed with pecuniary exactitude. Blue v. Donnie Baines Cartemps USA, 38,279 (La.App. 2d Cir.3/3/04), 868 So.2d 246; Vines v. Wood, 34,555 (La.App. 2d Cir.4/4/01), 785 So.2d 126. There is no mechanical rule for determining general damages; the facts and circumstances of each case control. Blue v. Donnie Baines Cartemps USA, supra. Severity and duration are factors to be considered in assessing quantum for pain and suffering. Blue v. Donnie Baines Cartemps USA, supra; Vines v. Wood, supra.
Allstate's argument regarding the lack of proof of causation emphasizes certain gaps in time between Holford's medical treatment and his failure to report the injury during his first visit to Dr. Barksdale 18 days after the accident. These facts, however, do not automatically discredit the total body of evidence. Holford consistently complained of pain. It is undisputed that this young adult never suffered back pain before the accident and missed 5 days of work the week following the accident. His belated initial report of continued back pain to Dr. Barksdale on February 10, 2003, can reasonably be interpreted as that of a young patient who unsuccessfully expected recovery with time (7 weeks) and then sought help. Such reluctance or naiveté in seeking additional medical attention is a factor which the trial court must weigh and involves the court's overall credibility analysis of the complaining victim. Accordingly, the trial court's finding of a causal relationship between this injury and the automobile accident presents no manifest error.
Regarding the general damages, the $25,000 award was described in the trial court's written reasons for judgment as relating to "chronic back pain" based upon its acceptance of Holford's testimony that he had experienced pain and discomfort through the time of trial. In this case, following the MRI's revelation of Holford's mild bulging discs, his doctor opined that those conditions were probably aggravated by the accident. Thus, this case does not rest solely on Holford's subjective reporting of a mere soft tissue injury, but has physiological support for a chronic condition. From this record, we therefore find that the trial court could conclude that Holford has suffered from a chronic pain condition lasting almost three years from the accident until trial. Other than raising certain issues of credibility, which are not for the appellate court to measure, Allstate offers no medical evidence rebutting the plaintiff's case. Accordingly, we find no abuse of the trial court's discretion in fixing the amount of the general damage award.
The judgment of the trial court is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.