988 So.2d 896 (2008)
Natalie SAUNDERS, Plaintiff-Appellant
v.
ANPAC LOUISIANA INSURANCE COMPANY, et al., Defendants-Appellees.
No. 43,405-CA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
*898 Anthony J. Bruscato, A. Blase Inzina, Monroe, for Appellant.
Davenport, Files & Kelly, by Shane Craighead, Monroe, for Appellees.
Before BROWN, DREW and LOLLEY, JJ.
LOLLEY, J.
In this personal injury case, Natalie Saunders, plaintiff, appeals a judgment from the Fourth Judicial District, Parish of Ouachita, State of Louisiana, which found in favor of defendants, ANPAC Louisiana Insurance Company and its insured, William Crow, II. For the following reasons, we reverse in part, amend in part, and, as amended, affirm.

FACTS
On December 10, 2005, as Natalie Saunders stopped for traffic at the intersection of La. Highway 594 and Orange Street in Monroe, Louisiana, she was rear-ended by Crow. ANPAC Louisiana Insurance Company and Crow ("Defendants") stipulated to liability. At the bench trial, only issues of causation and the extent of damages were tried. The trial court awarded $2,000.00 in general damages and $1,914.00 in medical expenses relating to Saunders' soft-tissue injuries. Further, the trial court held that Saunders' back injury was not related to the accident. Saunders now appeals.

LAW AND DISCUSSION

Causation
In the case sub judice, we must determine whether the trial court erred in finding that the automobile accident did not cause Saunders' back injury. In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained of. Maranto v. Goodyear Tire & Rubber Co., 1994-2603 (La.02/20/95), 650 So.2d 757. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Id. On appeal, this factual finding is governed by the manifest error/clearly wrong standard of review. Id. When the accident victim was in good health before the accident, and after the accident shows that a disabling injury manifested itself and that there is a reasonable possibility of a causal connection between the injury and the accident, it is presumed, subject to rebutting evidence, that the accident caused the disabling injury. Housley v. Cerise, 579 So.2d 973 (La. 1991).
The record reveals that Saunders was 20 years old at the time of the accident. In addition to being a full time student in nursing school, Saunders worked 12-hour shifts at Glenwood Emergency Room, and *899 led a very active lifestyle. Other than general aches and pains, Saunders had no history of receiving medical attention for back pain prior to the accident. After the accident, she initially experienced headaches and neck pain and went to Monroe Medical Clinic on December 23, 2005, where she reported these complaints to Dr. Tom Dansby. An MRI was ordered for her neck pain and headaches which revealed nothing out of the ordinary. We point out that Defendants concede the soft-tissue injuries and do not contest the damage award associated with it.
Dr. Dansby's medical notes do not reflect that Saunders complained of back pain, but Saunders testified that she did so advise Dr. Dansby. According to Saunders, Dr. Dansby orally recommended over-the-counter ("OTC") medicine for the back pain. The headaches and neck pain eventually subsided; however, Natalie continued to take OTC medicine for her back pain at least three to four times a week. Saunders eventually sought treatment at an orthopaedic clinic on May 30, 2006, since she was still experiencing back pain. Saunders documented on the "Patient History Questionnaire" that her back had been in continuous pain since December 2005. Dr. Bernie Caldwell saw Saunders and recommended conservative treatment which included back exercises and continued use of OTC medication for the pain. Dr. Caldwell informed her that the next step would be an MRI if she still did not improve. Relying on her nursing skills and the advice from the doctors she worked with, she continued to take OTC medication. Saunders testified that her back still did not get better and consequently, an MRI was performed in March 2007. Saunders followed up with Dr. Brian Bulloch in May 2007 to review the results from the MRI. According to Dr. Bulloch, the MRI revealed a minimal disc bulging at L-4 and S-1 of her spinal cord. There was also some mild degenerative disc changes at the 4-5 and 5-1 levels.
Prior to the accident, Saunders was a very active person with no pain issues  after the accident, she suffered chronic back pain. Dr. Bulloch, at his deposition, indicated that he did not know that Saunders was in an accident; however, his May 2007 medical notes specifically state that Saunders was in a motor vehicle accident. Despite being unprepared, he did opine, "If she were to tell me that indeed she had an accident that resulted in her having back pain since that time it would be reasonable to assume that the accident may indeed have been the cause of it[.]"
Defendants argue that there was no mention of back pain until several months after the accident and that Saunders did not seek medical attention for months at a time. As stated earlier, Saunders refutes that she did not tell the doctors about her back pain. In addition, several doctors agreed that it is not unheard of to experience pain months after an accident. Saunders also explains that she sought treatment when she could, which was often during breaks from school. Given the advice she received from medical professionals, her student lifestyle, and ambitious work schedule, her treatment schedule was understandable and does not discredit her pain. As a young adult, "such reluctance or naiveté in seeking additional medical attention is a factor which the trial court must weigh and involves the court's overall credibility analysis of the complaining victim." Holford v. Allstate Ins. Co., 41,187 (La.App. 2d Cir.06/28/06), 935 So.2d 758, 763.
Defendants also make much of the fact that the term "degenerative" was used in describing what was seen on the MRI and suggest that Saunders' back pain resulted from a natural deterioration that was unrelated *900 to the accident. After reviewing the record we cannot find a definitive answer as to whether this "degeneration" was purely a result of a preexisting condition. In fact, at his deposition, Dr. Bulloch indicated that the "only way to assess whether she had any preexisting finding would be have an MRI before and we don't have on to compare to so I really can't give an assessment of that." Dr. Bulloch also indicated that the findings from the MRI could have been trauma related.
Saunders' credibility was not questioned, nor is there convincing evidence to suggest that there was any other reason for her back pain. Her active lifestyle, including her exercise regimen, may have actually helped minimize a far worse injury to her spine. She has not had any surgery and continues to take a conservative approach to alleviate her back pain. A defendant takes his victim as he finds her and is responsible for all natural and probable consequences of his tortious conduct; where his action aggravates a preexisting condition, he must compensate the victim for the full extent of her aggravation. Touchard v. Slemco Elec. Found., XXXX-XXXX (La.10/17/00), 769 So.2d 1200; Edwards v. LCR-M Corp., 41,125 (La.App. 2d Cir.07/12/06), 936 So.2d 233. Here, even if Saunders was predisposed to a degenerative condition, at the very least the record reveals that Saunders' back was aggravated by the accident. Dr. Bulloch mentioned that it was also "possible the accident could have aggravated her back." Further, Dr. Caldwell indicated in his notes that the motor vehicle accident "may have participated some of the complaints per se."
After a thorough review of the record, we find that the trial court erred in finding that Saunders' back injury was unrelated to the accident. Saunders has met the burden of proving that her back injury was caused by the accident or at the very least aggravated by it. She is therefore entitled to recover additional damages specifically for her back pain.

Damages
The trier of fact has much discretion in the assessment of damages, and an appellate court will only disturb such awards when there has been a clear abuse of that discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). Appellate courts review the evidence in the light most favorable to the prevailing party to determine whether the trier of fact was clearly wrong in its conclusions. Id.
General damages involve mental or physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured exactly in monetary terms. Sallis v. City of Bossier City, 28,483 (La.App. 2d Cir.09/25/96), 680 So.2d 1333, writs denied, 1996-2592, 1996-2599 (La.12/13/96), 692 So.2d 376, 1063. If an articulated analysis of the facts discloses such an abuse of discretion, then examination of prior awards in similar cases is proper; an abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Dixon v. Tillman, 29,483 (La.App. 2d Cir.05/07/97), 694 So.2d 585, writ denied, XXXX-XXXX (La.09/19/97), 701 So.2d 174.
At the time of trial, Saunders still suffered from back pain  three years after the accident. Saunders testified that she sleeps on the floor for back support. She is not able to stay seated for long periods of time without back pain and therefore has difficulty driving long distances. She takes OTC medication as a preventive *901 measure if she knows she will be doing something that causes her back pain, such as driving or lifting. Her current job as a nurse requires standing for long periods of time and lifting patients which leaves her back sore at the end of the day. Clearly, Saunders is in pain but makes the best of her situation.
After reviewing similar cases, we find increasing the general damage award to $25,000.00 is appropriate. In Holford, supra, we upheld a $25,000.00 award where the plaintiff, Holford, suffered a back injury from a rear-end automobile accident. As with the case at hand, it was discovered after an MRI that Holford suffered from a mild bulging disc resulting in chronic pain. In addition, Saunders is entitled to recover medical expenses associated with her back injury. To recover medical expenses, the plaintiff must prove that, more probably than not, the medical treatment was necessitated by the accident. Brandao v. Wal-Mart Stores, Inc., 35,368 (La.App. 2d Cir.12/19/01), 803 So.2d 1039, writ denied, XXXX-XXXX (La.04/26/02), 814 So.2d 558. Here, the record is clear that Saunders sought necessary medical treatment after the accident. Dr. Bulloch indicated that he did not think that Saunders was exaggerating her situation. In light of her conservative approach to her back pain, Saunders has, in effect, mitigated her medical expenses which totaled $4,241.42. So considering, we also award Saunders special damages in that amount for her medical expenses.

CONCLUSION
For the foregoing reasons we affirm the trial court insofar as its finding and damage award associated with Natalie Saunders' soft tissue injuries. We reverse the trial court's finding that Saunders' back injury did not result from the motor vehicle accident. We increase the general damage award to $25,000.00 for Saunders' back pain, and award $4,241.42 in special damages for related medical expenses. All costs of this appeal are assessed against the defendants, William Crow, II and ANPAC Louisiana Insurance Company.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; AND AS AMENDED, AFFIRMED.