Judgment rendered April 5, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,995-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ORA HALL                                        Plaintiff-Appellant

versus

JO BENNETT and UNITED                           Defendants-Appellees
SERVICES AUTOMOBILE
ASSOCIATION

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-2946

Honorable C. Wendell Manning, Judge

* * * * *

EDDIE M. CLARK & ASSOCIATES, LLC        Counsel for Appellant
By: Eddie M. Clark

MAYER, SMITH & ROBERTS, LLP              Counsel for Appellees
By: Frank Knox Carroll

* * * * *

Before PITMAN, MARCOTTE, and ELLENDER, JJ.

**ELLENDER, J.**

Ora Hall appeals a jury verdict and judgment that awarded her $100,000 for past pain and suffering and $86,748.52 for past medical expenses arising from an auto accident, but denied her claims for mental anguish, future medical expenses, and loss of enjoyment of life. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

Ms. Hall was a 43-year-old certified nursing assistant who worked at the Northeast Louisiana Veterans Home, on Hwy. 165 North (Sterlington Road) in Monroe. On November 1, 2018, she had left her shift and was driving her 2011 Hyundai Sonata north on Sterlington Rd., in the left lane. At that moment, Jo Bennett was pulling out of the Veterans Home's public parking lot, turning right onto Sterlington Rd. in her 2012 Jeep Grand Cherokee. Ms. Bennett was not paying adequate attention to the traffic. She ran the front driver's side of her Jeep into the rear passenger side of Ms. Hall's Hyundai. Ms. Hall estimated she was going about 50 mph at the time; Ms. Bennett estimated she was going about 5 mph, having just pulled onto the road. Ms. Hall was able to drive her Hyundai home.

Ms. Hall told police at the scene that she was not hurt, but the next day, November 2, she went to University Health (also called, in the transcript, "E.A. Conway") with pain in her lumbar spine and right posterior upper leg, which she rated as "mild." They gave her a Toradol injection and released her to return to work November 5. According to her husband's testimony, Ms. Hall missed less than one week of work.

A week later, however, on November 8, Ms. Hall went to a chiropractor, Dr. G.G. Grant IV, complaining of headaches, upper and lower back pain, and right hip pain that radiated down her leg. Dr. Grant found that her back movement was not 100%, and started her on a course of treatments that ran about four months. By the time these concluded, on March 3, 2019, she had dropped her rating of lower back pain ("LBP") from "8" to "3," but manipulations did not completely resolve the issue, so Dr. Grant had advised seeing a pain management specialist. Based on her symptoms and her reported history of being pain-free before, Dr. Grant ascribed all her current problems to the accident.

Ms. Hall went to the pain specialist, Dr. John Ledbetter, on January 23, 2019. He ordered an MRI, which showed mildly exaggerated lumbar lordosis, advanced facet osteoarthropathy at C4-5 (suggesting active apophysitis), and degenerative changes at L4-5. Starting in March 2019, Dr. Ledbetter performed lumbar medial branch block procedures (called, in the record, "ablations" or "neurotomies"), on the left and right sides, two weeks apart. Each of these resulted in excellent, 100% pain relief, but the results were only temporary. The process had to be repeated in April-May 2019, April-May 2020, and May 2021, resulting in 90% pain reduction and no needed medication, but with the likelihood of having to repeat the process annually. Dr. Ledbetter conceded that Ms. Hall's arthritic changes may have predated the accident, but, based on her reported history of being pain-free before, they were asymptomatic. He therefore ascribed all her current complaints, and future medical treatment, to the accident.

## PROCEDURAL AND LITIGATION HISTORY

Ms. Hall filed this suit in September 2019 against Ms. Bennett and her auto insurance carrier, United Services Automobile Association ("USAA"). She alleged that the collision "caused or aggravated any pre-existing injuries"; in a discovery deposition in February 2020, she denied any prior low-back issues and stated that all her current pain resulted from this accident. USAA found, however, that 16 months before the accident, in June 2017, Ms. Hall had gone to a family doctor, Dr. Marshall Sanson, with complaints of LBP shooting down her right leg, precisely her postaccident complaint to Dr. Ledbetter. At trial, she admitted this, as well as seeing a chiropractor some 10-11 years prior, but insisted these were *soft-tissue* injuries, and they had totally cleared up before Ms. Bennett rear-ended her.

USAA sent Ms. Hall's medical records to Dr. Alan Kaye, a noted expert in interventional pain care and pharmacology, and lead author of a textbook called *Case Studies in Pain Management*, which describes a condition called Bertolotti's syndrome. Dr. Kaye agreed that Ms. Hall's February 2019 MRI showed edema, which he deemed clear proof of acute trauma and a recent accident. However, the MRI also showed arthritic and degenerative changes that were present on the 2017 X-ray taken at Dr. Sanson's office. He testified that these changes predated the accident and would continue to give her chronic problems the rest of her life. He also felt that her current condition was aggravated by her obesity (5′5″, 195 lbs.) and the nature of her work as a CNA. Although he did not mention it in his initial report, he stated in his deposition that this was a classic case of Bertolotti's syndrome, which affects 4-8% of the population and is permanent.

3

Prior to trial, the parties stipulated that Ms. Bennett was solely at fault in the accident; Ms. Hall's medical expenses, to date, were $86,748.52; Ms. Hall's medical records were true and correct copies; and USAA insured Ms. Bennett for the accident.

## TRIAL EVIDENCE

The parties proceeded to jury trial over six days from January 31 through February 9, 2022. After the jury was selected, on the third day of trial, Ms. Hall filed an "Emergency *Daubert* Motion" to exclude Dr. Kaye from referring to the accident as a "low impact" or "low speed" wreck (USAA ultimately agreed to this) and from expressing any opinion regarding Bertolotti's syndrome. She contended that no doctor had ever diagnosed her with this and no medical records supported it. The court denied this motion as untimely, adding that Ms. Hall's counsel had known about Dr. Kaye's opinion for over five months and thus had adequate time to hire his own expert.

On the fifth day of trial, Ms. Hall filed a "Motion to Extend Time Limitation" for closing arguments, seeking 60 minutes instead of 30. The court denied this also, noting (1) it was untimely, (2) Ms. Hall's counsel had not objected when 30 minutes was listed in the pretrial order, and (3) the stipulations obviated the need to argue many normal evidentiary issues.

On the merits, Dr. Grant, the chiropractor, testified as outlined above. He found "no evidence" that Ms. Hall suffered from her symptoms before the accident or was malingering. He admitted that she had seen Dr. Sanson

4

for LBP earlier, but he took her word that those complaints were completely resolved before the accident.[1]

Dr. Ledbetter, Ms. Hall's expert in anesthesiology and pain management, testified by deposition as described above. He admitted that her chronic condition may have predated the accident, and he was surprised to hear (at trial, for the first time) that she had seen another doctor earlier for LBP. He also agreed that her work as a CNA and her obesity might have contributed to her current state. Still, he believed she was asymptomatic before the accident, the ablations gave her good relief, and she would need these annually. At first, he said she would need them the rest of her life, but later amended this to say for the next 10-15 years.

Elizabeth Peralta, an expert in lifecare planning, testified that Ms. Hall's life expectancy was 37.9 years; annual ablations, plus follow-up care, would cost $836,945.70. Chad Garland, an expert forensic accountant, testified the present value of her needed lifetime care was $1,701,583.06, but if ablations were limited to only 10 years, it would be $249,125.23.

Ms. Hall's husband testified that she had no back pain before the accident, but since, she has "good days and bad days." He described having to help walk her back to the car after each ablation. On cross-examination, he admitted she was making no claim for lost wages.

Ms. Hall admitted she had been to Dr. Sanson for LBP about 16 months before the accident, but this was "muscle pain" and she had completely got over it. She added that her normal activities had been limited

---

[1] On cross-examination, Dr. Grant admitted that by arrangement with Ms. Hall's counsel, he would receive no payment for his services (some $7,400) unless Ms. Hall got a favorable verdict.

by her pain, and that she intended to get the ablations annually, as long as they continued to help her.

For USAA, Ms. Bennett testified that she was going only about 5 mph when she struck the rear of Ms. Hall's Hyundai: the Hyundai's bumper came off, but Ms. Hall was able to drive the car away. The damage to her own Jeep was negligible, $1,623.[2]

Dr. Robert Eisenstadt, Ph.D., an expert economist and retired University of Louisiana-Monroe professor, projected Ms. Hall's future medicals as $354,468 (based on 15 years of ablations) or $229,479 (based on 10 years).

Dr. Kaye, USAA's expert in interventional pain management, testified by deposition that he had not physically examined Ms. Hall. However, her MRI showed "enlarged transverse process forming pseudo arthritis with sacral ala," the very definition of Bertolotti's syndrome, as well as enlarged lumbar facets, both predating the accident. He also stated that her physical work as a CNA, her obesity, and probably her genetics contributed to her condition. He agreed that Dr. Ledbetter's treatment had been appropriate, but felt the direct effects of the accident had subsided and Ms. Hall was now experiencing pain she would have encountered anyway because of Bertolotti's syndrome.

### ACTION OF THE TRIAL COURT

The 12-member jury deliberated slightly under one hour and returned the verdict awarding past and future pain and suffering of $100,000 and past medicals of $86,748.52 (per the stipulation) but denying the claims of

---

[2] The damage estimate for Ms. Hall's Hyundai was $4,657.48.

mental anguish, future medical expenses, and loss of enjoyment of life. The court rendered judgment in accordance with the verdict, and later denied Ms. Hall's motion for JNOV, new trial, or additur.

Ms. Hall took this devolutive appeal designating three assignments of error.

## DISCUSSION

### *Extent of Injuries*

By her first assignment of error, Ms. Hall urges the jury manifestly erred in failing to apply the legal presumption that her low back symptoms that immediately appeared and continuously manifested themselves after the accident were, in fact, caused by the accident. She reiterates her testimony that her pain started with the accident, and argues that minor symptoms she took to Dr. Sanson months earlier were completely resolved before the accident. She cites the presumption of causation, *Housley v. Cerise*, 579 So. 2d 973 (La. 1991); the rule of taking the victim as you find her, *Touchard v. Slemco Elec. Found.*, 99-3577 (La. 10/17/00), 769 So. 2d 1200; the plaintiff's burden of proof, *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La. 2/20/95), 650 So. 2d 757; and the application of manifest error to the presumption of causation, *Detraz v. Lee*, 05-1263 (La. 1/17/07), 950 So. 2d 557.

She extensively recites her medical evidence, stressing that she met every element of the *Housley* standard, and arguing that the only contrary evidence was the 2017 visit to Dr. Sanson, for muscle pain that had completely resolved by the time of the accident. She also argues that Dr. Kaye provided no basis to find when her aggravated condition may have returned to pre-accident status. She concludes it was manifest error for the

7

jury not to award the full extent of her injuries, as was found in *Saunders v. ANPAC La. Ins. Co.*, 43,405 (La. App. 2 Cir. 8/13/08), 988 So. 2d 896.

She also argues that her damages are not really regulated by manifest error but by "res nova review," as stated in *Mart v. Hill*, 505 So. 2d 1120 (La. 1987): because the jury failed to consider the full extent of her damages, she is entitled to review unhindered by manifest error. She argues she is entitled to full indemnification. *State Farm Mut. Auto Ins. Co. v. Berthelot*, 98-1011 (La. 4/13/99), 732 So. 2d 1230. She concludes that the judgment should be amended to award her $400,000 for pain and suffering, $150,000 for loss of enjoyment of life, and $1,701,583.06 for future medical expenses.

A person injured through the fault of another is entitled to full indemnification for the damages caused thereby. La. C.C. art. 2315; *State v. La. Land & Expl. Co.*, 12-0884 (La. 1/30/13), 110 So. 3d 1038; *Wainwright v. Fontenot*, 00-0492 (La. 10/17/00), 774 So. 2d 70. A claimant's injury is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. *Housley v. Cerise*, *supra*; *Davis v. Wheeler*, 53,233 (La. App. 2 Cir. 3/4/20), 293 So. 3d 173, *writ denied*, 20-00781 (La. 10/14/20), 302 So. 3d 1124. Moreover, a defendant takes his victim as he finds her and is responsible for all natural and probable consequences of his tortious conduct. *Wainwright v. Fontenot*, *supra*; *Davis v. Wheeler*, *supra*.

Nevertheless, the plaintiff has the burden of proving by a preponderance of the evidence a causal connection between the accident and

8

injuries. *Maranto v. Goodyear Tire & Rubber Co.*, *supra*; *Davis v. Wheeler*, *supra*. The plaintiff satisfies this burden by proving through medical and lay testimony that it was more probable than not that the injury was caused by the accident. *Maranto v. Goodyear Tire & Rubber Co.*, *supra*; *Davis v. Wheeler*, *supra*.

Whether an injury caused a person's injuries is a question of fact, and an appellate court may not set aside a finding of fact made by a judge or jury in the absence of manifest error or unless it is clearly wrong. *Hayes Fund for First United Methodist Church of Welsh v. Kerr-McGee Rocky Mtn. LLC*, 14-2592 (La. 12/8/15), 193 So. 3d 1110; *Davis v. Wheeler*, *supra*. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Hayes Fund v. Kerr-McGee Rocky Mtn.*, *supra*; *Taylor v. Nexion Health at Pierremont Inc.*, 54,802 (La. App. 2 Cir. 12/14/22), 353 So. 3d 403.

At the outset, we must dismiss Ms. Hall's argument, confected from certain wording in *Mart v. Hill*, *supra*, that she is entitled to de novo review. Subsequent cases have made it abundantly clear that de novo review is available only when "a trial court legal error interdicts the fact-finding process," *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So. 2d 731, and not even in every such case, *Hicks v. USAA Gen'l Indem. Co.*, 21-00840 (La. 3/25/22), 339 So. 3d 1106. The finding of causation is a distinctly factual matter and subject to manifest error review. *Hayes Fund v. Kerr-McGee Rocky Mtn.*, *supra*; *Davis v. Wheeler*, *supra*. Under this standard, reversal is

9

warranted only if the appellate court finds that a reasonable factual basis does not exist for the trial court's finding and the record establishes that the finding is clearly wrong or manifestly erroneous. *Ryan v. Zurich Amer. Ins. Co.*, 07-2302 (La. 7/1/08), 988 So. 2d 214; *Davis v. Wheeler*, *supra*. On thorough review, we find nothing in this record that prevented the jury from receiving the relevant evidence, analyzing it, and assessing the competing claims. The request for de novo review lacks merit.

On manifest error review, we find the jury was faced with conflicting evidence regarding the causation and extent of Ms. Hall's injuries. Her chiropractor, Dr. Grant, and her pain specialist, Dr. Ledbetter, were uniform in their view that all of Ms. Hall's current problems stemmed from this accident, but both admitted that their view was informed by Ms. Hall's reported history of being completely pain-free before the accident. Notably, Dr. Ledbetter had never heard of her earlier treatment for very similar symptoms with Dr. Sanson until he gave his trial deposition. Ms. Hall's husband testified, contrary to the medical records, that she had no LBP before the accident; Ms. Hall admitted that, in a deposition, she denied any prior LBP, but conceded at trial that she had indeed gone to Dr. Sanson for LBP with pain "shooting down right leg," and to a chiropractor some years before that for unspecified treatment. On this evidence, a rational juror could find that Ms. Hall was not truly pain-free, or in "good health," so as to activate the presumption of causation traced in *Housley v. Cerise*, *supra*.

On the other hand, there was the evidence that Ms. Hall sought medical treatment from Dr. Sanson for similar LBP symptoms 16 months before the accident, and from a chiropractor for unspecified back pain before that. Then there was Dr. Kaye's assessment, based on the MRI taken three

months after the accident, that Ms. Hall was still showing "acute process" from the accident, and the X-ray taken 16 months before the accident, showing significant preexisting issues. From these films, and from his study of Dr. Grant's and Dr. Ledbetter's reports, he surmised that Ms. Hall was having LBP before the accident, the accident aggravated it, and at some point prior to trial it returned to pre-accident status. From the totality of the evidence, we cannot say this explanation lacked reasonable factual basis.

We also consider the role of credibility in the jury's decision. The weight to be given to an expert's testimony depends on the expert's qualifications and experience and especially on the facts on which that expert's opinion is based; the validity of the underlying facts relied on by the expert is crucial. *Mayes v. Morehouse Parish Sch. Bd.*, 54,796 (La. App. 2 Cir. 2/8/23), 355 So. 3d 750; *Davis v. Sweeney*, 44,997 (La. App. 2 Cir. 3/3/10), 31 So. 3d 1184; *McDonnell v. Brammer Mach. Shop Inc.*, 22-116 (La. App. 3 Cir. 10/19/22), 349 So. 3d 1151. Ms. Hall did not disclose any prior LBP to Drs. Grant and Ledbetter, and this may have diminished the jury's reliance on their opinions. Also, Ms. Hall's minimal treatment with Dr. Sanson in June 2017 was deemed inadequate by Dr. Kaye, as the symptoms reported then warranted a full spinal exam and MRI, which were not provided; a reasonable juror may have found that her pre-accident condition was not as trivial as she claimed. On this record, we will not disturb the jury's credibility calls.

Finally, Ms. Hall urges the verdict was manifestly erroneous because there was no factual basis to determine when her aggravated condition returned to pre-accident status. Juries and judges routinely must assess the duration of an aggravation of preexisting injury, and their finding is subject

11

to manifest error review.  *Perry v. Starr Indem. & Liab. Co.*, 52,720 (La. App. 2 Cir. 9/25/19), 280 So. 3d 813; *Peters v. Williams*, 40,403 (La. App. 2 Cir. 12/14/05), 917 So. 2d 702; *Tompkins v. Savoie*, 08-808 (La. App. 5 Cir. 3/24/09), 10 So. 3d 294.  Dr. Kaye testified that all medical treatment provided by Dr. Ledbetter was appropriate, and this provided a reasonable basis for finding that the aggravation had subsided by the time of trial.  We perceive no manifest error.

The first assignment lacks merit.

### *Admission of Expert Testimony*

By her second assignment of error, Ms. Hall urges the district court erred in denying her *Daubert* motion to exclude all testimony on Bertolotti's syndrome.  She argues that inadmissible evidence should not be presented to the jury, La. C.E. art. 103 C.  She then cites La. C.E. art. 702 A:

> A. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (2) The testimony is based on sufficient facts or data;
> (3) The testimony is the product of reliable principles and methods; and
> (4) The expert has reliably applied the principles and methods to the facts of the case.

She concedes that the trial court has broad discretion in determining whether expert testimony should be admissible and who should be permitted to testify as an expert, *Cheairs v. State*, 03-0680 (La. 12/3/03), 861 So. 2d 536, *Daubert v. Merrell Down Pharms. Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  She then contends that Dr. Kaye was unqualified to render any medical opinion regarding the "alleged Bertolotti's syndrome" as no foundation had been laid and the diagnosis is "not remotely reliable."

12

In support, she asserts that no evidence was ever introduced showing that she had been diagnosed with this disease; hence, his testimony was just conjecture and mere speculation.

Under the standard set out in *Daubert*, *supra*, the district court is required to perform a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589, 113 S. Ct. at 2795. Acting as gatekeeper, the district court has considerable leeway to determine whether expert testimony is reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). "Whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability * * * is a matter that * * * the trial judge [has] broad latitude to determine," and the decision to admit or exclude is reviewed for abuse of discretion. *Id.*, 526 U.S. 153, 119 S. Ct. at 1176.[3]

On close review, we find no abuse of the district court's discretion. Dr. Kaye cogently explained the physiology of Bertolotti's syndrome and how he found it on Ms. Hall's MRI. He also testified that the syndrome has been documented in a textbook of which he was the lead author. Aside from the unsupported claim that the diagnosis is unreliable, Ms. Hall offered nothing to challenge the "testability" of Dr. Kaye's method, dispute its peer review or publication, show its rate of error, or refute its general acceptance in the medical community.

---

[3] The factors listed in *Daubert* are (1) the "testability" of the scientific theory or technique, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the methodology is generally accepted in the scientific community. *See,* e.g., *LaBauve v. La. Med. Mut. Ins. Co.*, 21-00763 (La. 4/13/22), 347 So. 3d 724.

We also note that Dr. Kaye disclosed his diagnosis at his discovery deposition, taken on August 23, 2021, and reiterated it in his trial deposition, but counsel for Ms. Hall did not file his "emergency" *Daubert* motion until the third day of trial, February 2, 2022. Despite over five months' notice, counsel produced no expert or other evidence to counter or at least question Dr. Kaye's testimony. On this record, we find no abuse of the district court's discretion.

This assignment lacks merit.

### *Time Limitation on Closing Argument*

By her third assignment of error, Ms. Hall urges the district court erred in refusing to grant her motion for extension of time for closing arguments. She cites the constitutional guarantee of open courts, La. Const. art. I, § 22, and the trial court's power to require that the proceedings "be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done," La. C.C.P. art. 1631. She concedes that the district court's ruling on trial procedure will be reversed only for abuse of discretion, *First Nat'l Bank v. Carr*, 572 So. 2d 1106 (La. App. 1 Cir. 1990). However, she characterizes the trial evidence as "copious," including the testimony of her treating physician, her treating chiropractor, the life care planner, two economics experts, and the "unfounded and improperly admitted testimony" of Ms. Bennett's expert. She concludes that 30 minutes was simply not enough "for either side to walk the jury through" this complex case, and the limitation hampered the jury's factfinding function. She submits that this court should vacate the verdict and render judgment awarding her $400,000 in physical pain and

14

suffering, $150,000 for loss of enjoyment of life, and $1,701,583.06 in future medical expenses.

Ms. Hall correctly shows that the district court's decision in setting time limits for closing argument is subject to review for abuse of discretion. *Oliveaux v. St. Francis Med. Ctr.*, 39,147 (La. App. 2 Cir. 12/15/04), 889 So. 2d 1264, *writ denied*, 05-0454 (La. 4/29/05), 901 So. 2d 1067; *Mercer v. Fruehauf Corp.*, 492 So. 2d 538 (La. App. 3 Cir.), *writ denied*, 496 So. 2d 350 (1986). In *Mercer*, the Third Circuit disapproved of giving plaintiff's counsel an extra 15 minutes for rebuttal, but did not disapprove giving both sides 30 minutes for closing argument, in a products liability case. Here, the district court aptly noted that pretrial stipulations obviated many normal evidentiary issues, and Ms. Hall has not identified any points, topics, or arguments that she would have presented but for the time limit.

We note further that at a conference on August 7, 2021, the court limited closing argument to 30 minutes, and neither side objected. Given the timing of the motion and the purely generic nature of the claim, we find no abuse of the district court's broad discretion.

This assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, the judgment is affirmed. All costs are to be paid by Ora Hall.

**AFFIRMED**.